## Case No. 18,143.

YORK MANUF'G CO. v. ILLINOIS CENT. R. CO.

[1 Biss. 377.] [1]

Circuit Court, N. D. Illinois. June, 1862.[2]

COMMON CARRIER—LIMITATION OF LIABILITY.

1. A common carrier may by special contract, limit his common law liability to that of an ordinary bailee for hire.

2. He cannot, however, go beyond this, or escape liability for misconduct or negligence.

This action was brought to recover the value of one hundred bales of cotton, the

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2 [Affirmed in 3 Wall. (70 U. S.) 107.]

property of the plaintiff, which, it is alleged, were lost by the wrongful act of the defendant, in course of transit from Memphis to Boston. Thos. Trout & Sons were the agents of the plaintiff at Memphis in the fall of 1859, and on the 8th of November, purchased 201 bales of cotton on account of the plaintiff. Harris, Hunt & Co. were defendant's agents at Memphis for the purpose of making contracts for the shipment of goods from that place, which might pass over the Illinois Central Railroad or any portion of it.

Gallup & Hitchcock, for plaintiff.

Scates, McAllister & Jewett, for defendant.

DRUMMOND, District Judge (charging jury). I think there can be no doubt of the correctness of this principle, that the defendant, as a railroad corporation of this state could, under the law, appoint agents at Memphis to make contracts for freight to be carried over the road, and for the purpose of this action it is sufficient to regard this as a contract made at Memphis, by Harris, Hunt & Co. with T. Trout & Sons, the agents for the plaintiff, for the transit of the cotton from Memphis to Boston; and inasmuch as no controversy has been made that the cotton was actually in the possession or control of the defendant at Cairo, it is enough for us to know that defendant had authority to appoint an agent to make a contract which would be binding upon defendant the very moment the cotton came into the company's possession at Cairo, or that of its agents, because there it was within the limits of the state of Illinois, and the charter, of course, operated on the subject matter of the controversy. This being so, it was competent for the defendant, through its agents, to make the same kind of contracts, with the same restrictions and conditions, that they would have made at Memphis. The first question, therefore, to be determined is whether the defendant, through its agents at Memphis, made a contract for the transfer of this cotton from Cairo over its road, and if so, what were the terms and conditions of that contract. Thomas Trout & Co. acted for the plaintiff; Harris, Hunt & Co. for the defendant. On the 8th of November the shipment took place on board the steamer Adriatic, at Memphis. A bill of lading has been introduced which refers to the cotton as having been shipped by T. Trout & Sons that day on board the Adriatic, for Cairo, to be delivered without delay at the port of Boston, "fire, and the unavoidable dangers of the river only excepted," to Samuel Batchelor, treasurer, or to his consignee, and paying a freight of $4.75 per bale, from Memphis to Boston, by rail. And Mr. Trout, when asked in relation to his agency and the business transacted, says, "we had shipped the cotton on account of the York Manufacturing Company, on the 8th of November, 1859, 201 bales; the quality was strictly middling, and marked 'Y. M. Co.'—it was put on the steamer Adriatic. We made a contract with Harris, Hunt & Co. to ship the cotton to Boston. They signed a bill of lading, as agreed, for the I. C. R. R. Co."

Now the first question to be determined is, whether this property was shipped under this contract. It is not material as to the authority of Thos. Trout & Sons, from the plaintiff. They acted as the agents of the plaintiff, and delivered the cotton to the agents of the defendant, to transport it from Memphis to Boston. Then whatever contract Thos. Trout & Sons made was binding on the plaintiff, because, so far as the defendant was concerned, the only persons that acted for the company were Thomas Trout & Sons. If they shipped the cotton under a contract with the defendant, the only contract which could be binding on the defendant was the contract with Thos. Trout & Sons, and whether they were authorized by the plaintiff to make it is perfectly immaterial.

A bill of lading is ordinarily a memorandum of the quantity of the goods to which it refers, and, as such, may be explained, and is not conclusive evidence as to the quantity or quality of the goods; but in addition to being a memorandum of the amount of the goods, it is also a contract, and has precisely the effect of any other contract by which a party acknowledges that he receives goods, and agrees to transport and deliver them at a particular place for a fixed sum. That is what is done by the terms of this contract.

Was this property delivered to the agents of the company, and did they receive and agree to hold and transfer it under this contract? If they did, then, as a matter of course, it is the only contract which is binding upon them. And it is generally true of all transactions of this character, that when property is delivered to a carrier, either by land or by water, and a bill of lading is given, by which the carrier agrees to transfer the property for a fixed price, the bill of lading constitutes the agreement between the parties. If the property was delivered under this bill of lading as the agreement binding upon defendant for transit of the property over its road, then it is the only contract which is binding on them, and we must look to the terms of the contract in order to understand what they were.

In this contract there is an exception to the effect that the company are not subject to loss by fire, that is to say, that the obligations of the carrier did not include that of an insurer. He is responsible for all losses, it is said, except those of God and the public enemies. It is competent, however, for the carrier to limit his responsibility, and there can be no doubt, particularly in relation to so inflammable a material as cotton, that it is competent for carriers to put limitations upon their liability, so that they will not be responsible for the loss of any cotton in case of fire. There is such exemption in this bill of lading, and if it was under this contract that

the cotton was shipped, then by its terms the defendant would not be subject to a loss by fire, except under certain contingencies to be hereafter explained.

At the same time this bill of lading was executed by Harris, Hunt & Co., acting as agents of the defendant, the steamboat Adriatic also executed a bill of lading, and, as it appears, with Harris, Hunt & Co., by which it was agreed that the goods should be transported from Memphis to Cairo, and there delivered to Mr Abbott, the agent of the defendant, and the price fixed as stated in this bill of lading. They were to be taken at $4.75 per bale and by way of the Illinois Central Railroad. The steamer Adriatic arrived at Cairo on the evening of the 10th of November, the shipments having been made on the 8th, during the night. Shortly after its arrival they transferred the cotton belonging to the plaintiff, with other cotton, to the barge lying by the side of the steamer. On the following day, November 11, the whole of the cotton was on board the barge, and the barge was fastened to the landing some little distance from where the steamer was lying. Not very long after the barge was placed there the fire was discovered, by which a very considerable portion of the cotton was consumed, and so far as this plaintiff is concerned, there was a loss of one hundred bales.

Now if you find that there was no contract limiting the liability of the defendant in relation to the fire, then the defendant would be responsible for the loss by fire, when the cotton came into its possession. If you shall find that there was a contract which limited the liability of the defendant, and which exempted the defendant from such liability, then the remaining question is, whether the defendant exercised reasonable care of this property. That is a question of fact for the jury to determine.

It seems to be conceded by the counsel on both sides, and it appears by the evidence we have had before us, that the proper way of transporting cotton is to leave it uncovered. The fact seems to be that if it could be covered completely, so as to prevent all sparks from reaching it, that would be the safest way of transportation; but this is not the general way of transport, and is said to be impracticable. It is found best to leave it uncovered, so that if it catch fire it can be extinguished at the earliest possible moment.

It is for you to say, if you shall find that there was this limitation upon the defendant as a common carrier, and that it was not subject to a loss by fire, in consequence of a special contract, whether the defendant is responsible in consequence of want of due care in the management of this cotton. You will consider, firstly, the value of the property; secondly, the character of the property; thirdly, the circumstances under which it was placed; and it is for you to say whether there was due care exercised in reference to the cotton. If there was due care, and if there

was an exemption, then the plaintiff cannot recover; if there was not due care used by the defendant, then, notwithstanding there might have been an exemption in the special contract, still the defendant would be responsible. If you shall find that the defendant is responsible, the damages will be the net value of the property in the market to which it was to be transported, which, I suppose, would be the value of the cotton at Boston, deducting freight.

It is stated that the cotton was insured by an insurance company in Boston, and that the action is brought by the plaintiff on behalf of the insurance company. That it is competent for the plaintiff to do.

Verdict for defendant.

This case was affirmed by the supreme court in 3 Wall. [70 U. S.] 107, where the case is fully stated, and the same principles announced as in the circuit court decision. See authorities there referred to, and also Woodward v. Illinois Cent. R. Co. [Case No. 18,007].